IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DILLON AUTO SALES, INC., a Nebraska Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY, an Ohio Corporation;<br><br>Defendant. | **8:24CV3213**<br><br><br><br>**ORDER** |

This matter comes before the court on Plaintiff's Motion to Exclude Expert Testimony of Defendant's undisclosed and unnamed representative (Filing No. 45) and Defendant's Motion to Exclude Plaintiff's Experts Brian Chenvert, Dennis McClay, and Rex Beckham. (Filing No. 48). These pretrial matters were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

## I.    BACKGROUND

Plaintiff Dillon Auto Sales, Inc. ("Dillon") owns four commercial buildings at 6341, 6345, 6401, and 6521 N. 28th Street in Lincoln, Nebraska. (Filing No. 1-1, at paras. 1-3). Defendant Motorists Commercial Mutual Insurance Company ("MCMIC") issued Dillon a commercial property insurance policy, effective from October 31, 2021 through October 31, 2022. (Filing No. 1-1, at paras. 1-2). On June 16, 2022, a hail and windstorm allegedly damaged signs and air conditioning units at Dillon's properties. Dillon then filed a claim under the policy. (Filing No. 1-1, at paras. 4-5).

Shortly after the storm, Dillon retained public adjuster Brian Chenvert ("Chenvert") to represent its interests in the insurance claim. (Filing No. 1-1, at para. 27; Filing No. 48-2, Ex. 1 at 4:14-25). Chenvert has experience inspecting, analyzing, and documenting residential and commercial storm losses, representing policyholders in disputes and arbitration proceedings, as well as reviewing engineering reports, adjuster estimates, and carrier valuations. (Filing No. 48-2, Ex. 7 at Attach. C). Chenvert then retained Rex Beckham ("Beckham"), a roof consultant and public adjuster, to advise on the condition of Dillon's roofs. (Filing No. 48-2, Ex. 1 at 33:24-34:17). Chenvert also retained Dennis McClay ("McClay"), a licensed public adjuster to prepare a damage estimate using Xactimate software, the industry standard for insurance claim estimation. (Filing No. 48-2, Ex. 1 at 70:21-72:13).

On July 15, 2022, MCMIC's adjuster Richard Hollatz ("Hollatz") inspected the property with Chenvert and Beckham present. (Filing No. 48-2, Ex. 1 at 32:21-25). Hollatz identified damage to soft metals, stucco, and signs, and attributed the damage to hail. (Filing No. 47-3, at p. 2). Neither Chenvert nor Beckham provided a formal report or summary after that inspection. (Filing No. 48-2, Ex. 1 at 41:5-11). MCMIC later retained forensic engineer Robert Herrera ("Herrera") to conduct another inspection on September 15, 2022. (Filing No. 1-1, at para. 21; Filing No. 48-2, Ex. 4). Herrera inspected all four buildings and issued a report identifying certain hail-related damage. (Filing No. 1-1, at para. 22; Filing No. 48-2, Ex. 4). MCMIC relied on Herrera's report to prepare its estimate. However, Dillon contends MCMIC's estimate omitted damage that Hollatz observed and photographed during the July 2022 inspection. (Filing No. 1-1, at paras. 23-26).

In August 2023, McClay completed an Xactimate estimate valuing roof, sign, and other exterior repairs at approximately $828,743.91. (Filing No. 1-1, at paras. 29-30). McClay based the estimate on the opinions of the public adjusters and prepared it before Beckham completed a formal report. (Filing No. 48-1, at p. 14). MCMIC contends Chenvert directed McClay to input data into Xactimate without any supporting reports, scientific findings, or sufficient methodology. MCMIC also alleges that McClay relied on

Beckham's opinions for detailed structural analysis of the roofing systems. MCMIC further asserts that Chenvert relied on McClay to prepare the estimate and lacks independent knowledge of the costs reflected in it beyond reading the estimate prepared by others. (Filing No. 48-1).

On April 3, 2024, nearly two years after the storm, Beckham returned to the property at Chenvert's request to open the roofing membrane and conduct a formal inspection of two of the four buildings. MCMIC contends the initial inspection required this step, but Beckham did not perform it at that time. (Filing No. 48-1, at pp. 4-5; Filing No. 48-2, Ex. 2 at 11:9-16:12). Beckham later prepared a formal report recommending full roof replacement for those two buildings. (Filing No. 48-2, Ex. 2 at 36:3-5, Ex. 6). During his deposition, Beckham acknowledged that intervening storm events could have caused the damage he observed during the second inspection, and he did not investigate potential intervening causes when preparing his report. (Filing No. 48-2, Ex. 2 at 20:1-13).

Dillon's public adjusters valued the damage at approximately $828,743.91 in replacement cost value, plus an additional $161,094.86 for sign damage, for a total claimed loss of $989,838.77. (Filing No. 1-1, at paras. 29-30). MCMIC valued the building damage at $26,095.68 in replacement cost value and the sign damage at approximately $105,143.50 in actual cash value, figures substantially below Dillon's. (Filing No. 47-2, at Interrogatory Nos. 10-14; Filing No. 1-1, at paras. 35-36). Dillon alleges MCMIC relied on the Engineer Report despite photographs and observations from its earlier inspection reflecting additional damage, failed to provide Herrera with all relevant evidence, applied improper depreciation to a new LED sign, and did not include sales tax on the agreed replacement cost value of the damaged signs. (Filing No. 1-1, at paras. 23-34).

This lawsuit followed. Dillon filed suit in the state district court in Lancaster County, Nebraska on June 12, 2024, asserting claims for breach of contract, breach of the common law duty of good faith and fair dealing, and waiver and estoppel, and seeks damages of no less than $989,838.77 plus interest, attorney's fees, and costs. (Filing No. 1-1, at paras. 38-59). MCMIC removed the matter to this court on November 21, 2024. (Filing No. 1).

On February 6, 2025, the undersigned issued a Final Progression Order setting deadlines for this case, including deadlines for expert identification and disclosures. (Filing No. 13). The court later granted the parties' joint request to extend those deadlines and entered a First Amended Final Progression Order. (Filing No. 28). Under that order, the parties agreed to identify all experts by October 30, 2025. Plaintiff's deadline for complete expert disclosures was December 1, 2025, and Defendant's deadline was February 6, 2026. (Filing No. 28). Before depositions began, counsel agreed to depose witnesses initially as fact witnesses only and to permit additional depositions if either party later designated those witnesses as experts. (Filing No. 51-1, at paras. 4-7). The parties deposed Chenvert and Beckham on August 19, 2025. (Filing No. 51-1, at para. 8). MCMIC never sought to depose McClay. (Filing No. 51-1, at para. 9).

On November 19, 2025, the court held a telephonic status conference during which the court granted Dillon's unopposed motion to extend the expert deadlines. (Filing No. 39). Dillon served its initial expert disclosures on November 4, 2025, identifying Chenvert, McClay, and Beckham. (Filing No. 38; Filing No. 51-1, at para. 10). Dillon served its complete expert disclosures on December 8, 2025. (Filing No. 41; Filing No. 51-1, at para. 11). On February 2, 2026, MCMIC served its expert disclosures identifying Herrera, Hollatz, and an unnamed "representative from MCMI" expected to testify on the bad faith claim. (Filing No. 42; Filing No. 47-3, at p. 2).

On March 4, 2026, the court held another telephonic status conference. (Filing No. 43). During that conference, Dillon informed the court that MCMIC had disclosed an unnamed insurance representative as an expert witness but had not provided that person's name. The undersigned ordered MCMIC to supplement its disclosures with the representative's name within fourteen (14) days, or no later than March 18, 2026. (Filing No. 43). MCMIC did not do so. (Filing No. 47-1, at paras. 5-6). On the deadline, defense counsel emailed Plaintiff's counsel stating she was still working to obtain the representative's name and hoped to provide it by the end of the week. (Filing No. 47-4). To

4

date, MCMIC has not disclosed the representative's name. (Filing No. 47-1, at para. 5; Filing No. 47-2, Interrogatory No. 2).

On April 3, 2026, Dillon moved to exclude MCMIC's unnamed corporate representative. Dillon argues that MCMIC violated Fed. R. Civ. P. 26 and the court's March 4, 2026 order, by failing to identify the witness. Dillon also argues that the disclosure failed to satisfy Fed. R. Evid. 702. (Filing No. 45). MCMIC did not respond to that motion.[1] Instead, on April 6, 2026, MCMIC filed a certificate of service indicating it had served amended expert witness disclosures, although the court has not received any information describing what that amendment contains. (Filing No. 49). Also on April 3, 2026, MCMIC moved to exclude Chenvert, McClay, and Beckham, under *Daubert* and Fed. R. Evid. 702. MCMIC argues those witnesses lack the qualifications and methodological reliability necessary to offer opinions regarding damage causation and repair costs. (Filing No. 48). Dillon filed an opposition to that motion. (Filing No. 50). MCMIC did not file a reply.

## II.   LEGAL STANDARD

The admission of expert testimony is governed by Fed. R. Evid. 702 which provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

---

[1] Pursuant to NECivR 7.1(b)(1)(C): "Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts."

The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021); *see also* Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule") (*citing* Fed. R. Evid. 104(a)).

Courts have interpreted Rule 702 as vesting trial courts "with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015) (*quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). In order to carry out this gatekeeping function, the Eighth Circuit has instructed district courts to apply the following three-part test for screening expert testimony: (1) "[The expert's] testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant"; (2) "the expert must be qualified to assist the finder of fact"; and (3) "the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger*, 9 F.4th at 777.

Disputes about the factual basis of an expert's testimony ordinarily implicate the credibility, not the admissibility, of the testimony. *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 450 (8th Cir. 2008); *see also Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006). Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (*quoting Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001)). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (quotation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Bair Hugger*, 9 F.4th at 778. District

6

courts are "not to weigh or assess the correctness of competing expert opinions." *In re Bair Hugger,* 9 F.4th at 778. The jury, not the trial court, should be the one to "decide among the conflicting views of different experts." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

Where a party fails to properly disclose an expert witness as required by Fed. R. Civ. P. 26, that party is not allowed to use the witness to supply evidence at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The failure to disclose in a timely manner is equivalent to a failure to disclose. *Vogt v. State Farm Life Ins., Co.,* 963 F.3d 753, 771 (8th Cir. 2020). Rule 37(c)(1)'s sanction is self-executing and applies when a party fails to comply with Rule 26(a) and then seeks to use the undisclosed information on a motion, at a hearing, or at trial. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018); *Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 435 (8th Cir. 2019). The court has wide discretion in fashioning the appropriate remedy and will consider the reasons for noncompliance, the surprise and prejudice to the opposing party, the extent to which the testimony would disrupt the order and efficiency of trial, and the importance of the testimony. *See Wegener v. Johnson*, 527 F.3d 687, 693 (8th Cir. 2008).

### III.    ANALYSIS

**A.    Dillon's Motion to Exclude the Unnamed MCMIC Representative**

Dillon moves to exclude MCMIC's unnamed corporate representative on two independent grounds: MCMIC's failure to identify the witness and the inadequacy of the disclosure. For the following reasons, that motion is granted.

1. *Failure to Disclose*

MCMIC disclosed an unnamed "representative from MCMI" as a non-retained expert witness expected to testify on its bad faith defense, but it did not identify the witness or provide any contact information or other identifying detail in its expert disclosures. (Filing No. 47-3). MCMIC also failed to identify the witness in response to written

7

discovery specifically requesting the names of all individuals it intended to call at trial, and notably it has still not provided a name or any explanation for the omission. (Filing No. 47-2, Interrogatory No. 2; Filing No. 47-1, at paras. 5-6).

Rule 37(c)(1) excludes undisclosed witnesses who are later offered at trial unless the failure to disclose was substantially justified or harmless. *Petrone*, 940 F.3d at 435; *Vanderberg*, 906 F.3d at 702. MCMIC has designated the unnamed representative as a trial witness, triggering that sanction. (Filing No. 47-3). Because MCMIC bears the burden of showing substantial justification or harmlessness, its failure to oppose the motion and make such showing is itself sufficient to warrant exclusion. The court nonetheless considers the four factors bearing on that determination, which are the importance of the testimony, the reason for the failure to disclose, the prejudice to the opposing party, and whether a continuance could cure that prejudice. *Citizens Bank of Batesville, Ark. v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994). Although exclusion "is a harsh penalty and should be used sparingly," the court finds that each factor weighs in favor of exclusion. *Wegener*, 527 F.3d at 692 (internal quotations omitted).

As to the first factor, the representative was designated to testify regarding Dillon Auto's bad-faith claim, which is one of Dillon's three causes of action and therefore relevant to MCMIC's defense. Dillon alleges, among other things, that MCMIC ignored evidence favorable to coverage, failed to provide its engineer with material information gathered during its own investigation, and unreasonably hindered resolution of the claim. (Filing No. 1-1, at paras. 51-57). Testimony from an MCMIC representative concerning claim handling and the investigation process could therefore be important. But importance alone has never been sufficient to excuse noncompliance with the Federal Rules or a court's express order. *See Firefighters' Inst. for Racial Equality v. City of St. Louis*, 220 F.3d 898, 902-03 (8th Cir. 2000) (affirming exclusion of expert even accepting that the testimony would have been significant, where the party "provided no explanation for its delay in raising" its justification and filed the report nearly two months late with no excuse); *Wegener*, 527 F.3d at 692-93 (holding that importance of excluded testimony did not

outweigh noncompliance where "a substantial amount of other evidence was presented" on the same point and the failure was neither substantially justified nor harmless).

On the second factor, MCMIC has offered no justification whatsoever for its failure. (Filing No. 47-1, at para. 6). It had ample time to identify a representative before the February 9, 2026 expert disclosure deadline, received an additional fourteen days by the court, complied with neither, and never again requested additional time or shown good cause to modify the court's deadlines. (Filing No. 43; Filing No. 47-1, at para. 7). After Dillon filed the present motion, MCMIC filed a certificate of service indicating it had served amended expert witness disclosures, but it never responded to the motion, never explained to the court what the amendment contained, and never offered any justification for its prior failures. (Filing No. 49). That silence is fatal here. In *Firefighters' Institute, 220 F.3d 898*, the Eighth Circuit affirmed striking an expert where the plaintiff named an expert by the deadline, but never filed a report, promised the court the report would follow within days, and then failed to produce it for nearly two months longer without providing any explanation for the delay. Here, MCMIC never identified the witness at all, not even by name, despite disclosures, written discovery specifically requesting trial witnesses, and a court extension, and it has offered nothing to explain why.

The third factor (prejudice to the opposing party) also weighs in favor of exclusion. The written discovery deadline closed on November 12, 2025, and the deposition deadline expired on March 2, 2026. (Filing No. 28). Because MCMIC never identified the representative, Dillon had no opportunity to investigate the witness's background, conduct written discovery, or take the witness's deposition before those deadlines passed. Even where an opposing party is not surprised by the subject of testimony, it may still be "surprised by the untimely disclosure of the opinion as evidence and of [the witness] as the opinion's source," and "[c]ounsel's preparation for the cross examination or possible rebuttal of [a] witness…can be extensive." *Wegener, 527 F.3d at 693*. Here, Dillon was denied both adequate notice and any meaningful opportunity to prepare.

Finally, as to the fourth factor, a continuance would not cure the prejudice and would reward persistent noncompliance. Trial is set for October 13, 2026, and granting additional time for MCMIC to identify and produce a witness it was ordered to name seven months ago would further delay this case without justification. Even if a continuance permitted Dillon to depose the witness now, it would not restore Dillon's lost opportunity to pursue timely written discovery or evaluate the witness in the context of the broader record. Under these circumstances, the court finds that a continuance would not adequately cure Dillon's prejudice. Because all four factors weigh in favor of exclusion, the motion to exclude the unnamed MCMIC representative is granted.

### 2. *Adequacy of the Disclosure*

Exclusion is independently warranted because MCMIC's disclosure is inadequate. Rule 26(a)(2)(C) requires non-retained experts to disclose the subject matter and a summary of facts and opinions on which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). A disclosure that does not identify what specific facts and opinions the witness will provide does not satisfy that requirement. *Vanderberg*, 906 F.3d at 703. A disclosure that merely states topics at a high level without identifying the pertinent facts and opinions to which the expert will testify amounts to no disclosure at all. *Kuecker Logistics Group, Inc. v. Greater Omaha Packing Co., Inc.*, 2024 WL 149839 at *4, 7 (D. Neb. Jan 12, 2024).

MCMIC's disclosure states only that the representative will testify that there was "a reasonable basis" for denying additional coverage, that MCMIC "reasonably relied in good faith" on its adjuster and engineer, that it "performed a reasonable investigation," and that it "had an arguable basis to deny additional coverage." (Filing No. 47-3, at p. 2). That is the entirety of the disclosure and the court has little difficulty concluding it is deficient.

Those four statements are not a summary of facts and opinions. They are essentially a restatement of what MCMIC would need to prove to defeat the bad faith claim. Rule 26(a)(2)(C) requires a disclosure that tells the opposing party what specific facts the witness observed, what investigation the witness conducted, what information the witness

10

relied upon, and what opinions the witness formed from that information. Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). As this court explained in *Kuecker*, a disclosure that "merely states the topic that will be discussed at a high level" without identifying the pertinent facts and opinions "is insufficient," because the purpose of Rule 26(a)(2)(C) is to "outline the main points of the anticipated testimony and inform the other side of the factual and opinion testimony of the non-retained expert so that the other side may prepare for trial." *Kuecker*, 2024 WL 149839 at *4 (internal quotation marks and citations omitted).

MCMIC's disclosure does none of what the rule requires. It does not identify which facts the representative personally observed during the claim handling. The disclosure instead broadly references "information obtained from its adjuster and engineer" without specifying what that information was, how the representative evaluated it, or what opinions flow from it. A disclosure pitched at that level of generality is indistinguishable from the disclosures rejected in *Kuecker*, where descriptions stating that a witness "may" testify about general topics, with no accompanying summary of facts or opinions, amounted to "no disclosure at all." *Id*. at *7. The Eighth Circuit made clear in *Vanderberg* that parties are entitled to presume that their opponents will comply with the Rules and that experts will be properly disclosed. *Vanderberg*, 906 F.3d at 704 (internal quotation marks omitted). By reducing its entire disclosure to four conclusory phrases, MCMIC left Dillon to guess what the representative will say, which Rule 26(a)(2)(C) does not permit. Dillon's motion to exclude the unnamed MCMIC representative from testifying at trial is therefore granted on both grounds.[2]

**B.    MCMIC's Motion to Exclude Chenvert, McClay, and Beckham**

MCMIC separately moves to exclude all three of Dillon's non-retained experts under *Daubert* and Federal Rule of Evidence 702, arguing they lack the qualification and methodological reliability to opine on roof and hail damage causation and repair costs. (Filing No. 48). The court notes that Chenvert and Beckham were initially deposed as fact

---

[2] Dillon separately argues that the disclosure fails to satisfy Fed. R. Evid. 702. Because exclusion is warranted on both grounds discussed above, the court does not reach that argument.

witnesses and that all three witnesses possess firsthand factual knowledge arising from their direct involvement in the claim. The Rule 702 analysis is therefore confined to their challenged expert opinions.

1. *Brian Chenvert*

MCMIC argues Chenvert should be excluded on two grounds. First, MCMIC argues that Chenvert is unqualified because he is not a licensed engineer and second, that his methodology is unreliable because he examined only one of the four buildings during his first site visit and produced no formal report afterward. Neither argument is persuasive.

Rule 702 permits expert testimony from a witness qualified by "knowledge, skill, experience, training, or education" whose specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702(a). The rule does not require a particular credential or that an expert hold the identical specialty as the opposing party's witness. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). Consistent with the text of the rule, courts have recognized that experience alone may provide a sufficient foundation for expert testimony, and that "in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, advisory committee's note to 2000 amendment. What matters is whether the witness's knowledge will assist the trier of fact, a standard satisfied "where expert testimony advances the trier of fact's understanding to any degree." *Robinson*, 447 F.3d at 1100 (*quoting* 29 Charles Alan Wright & Victor James Gold, Federal Practice And Procedure: Evidence § 6265 (1997)). Several courts have held that public adjusters are qualified to testify on damage causation and repair costs in first-party insurance cases without holding engineering credentials. *See Cooley v. State Farm Fire and Casualty Co.*, 661 F. Supp. 3d 618, 623 (S.D.Miss. 2023) (collecting cases).

Chenvert is a licensed public insurance adjuster with fifteen years of experience inspecting, documenting, and evaluating commercial storm losses, representing policyholders in disputes and arbitration, as well as reviewing engineering reports and

carrier valuations. (Filing No. 48-2, Ex. 7 at Attachment C). Dillon hired Chenvert shortly after the storm to represent its interests and he was present during Hollatz's July 2022 inspection of the property. (Filing No. 1-1, at para. 27; Filing No. 48-2, Ex. 7, at p. 8). His expected testimony covers the cause and extent of the hail damage to Dillon's four buildings, the adequacy of MCMIC's investigation, and insurance industry standards and practices. (Filing No. 48-2, Ex. 7 at pp. 1-9). The argument that Chenvert is unqualified is not persuasive. It appears that Chenvert has inspected hundreds of commercial storm losses over the last fifteen years, reviewed engineering reports for accuracy, negotiated repair costs with insurance carriers, and represented policyholders in disputes and arbitration. The record reflects experience in the areas on which he is expected to opine, and the court is satisfied he meets the threshold for qualification under Rule 702. The rule is "broadly phrased" and applies not only to credentialed scientists, but also to "skilled witnesses" whose expertise comes from experience, and any difference between Chenvert's qualifications and those of a licensed structural engineer goes to the weight of his testimony, not its admissibility. *See Robinson*, 447 F.3d at 1100; Fed. R. Evid. 702 advisory committee's note to 1975 enactment.

MCMIC's challenge to Chenvert's methodology is equally unpersuasive. MCMIC argues that Chenvert's opinions are unreliable because he inspected only one of the four buildings during his first site visit and did not prepare a formal report afterward. The court considered a materially similar argument in *Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 507 F. Supp. 3d 1096 (E.D. Mo. 2020), a property-insurance case involving alleged hail damage to a commercial roof. In that case, the insurer sought to exclude the plaintiff's expert because the expert had not personally inspected the roof. Instead, he relied on a meteorological report, reviewed more than seventy-five photographs of the roof, and discussed the damage with a colleague who had inspected the property in person. *Id*. at 1102. The court denied the motion and held that the expert had reached his own independent conclusions based on the evidence available to him. The court further explained that the expert's failure to personally inspect the roof was "certainly fodder for

rigorous cross-examination," but did not make his opinions inadmissible. *Id*. The court also rejected the argument that omitting certain steps from his usual inspection methodology affected admissibility, rather than the weight of the testimony, and that cross-examination rather than exclusion was the proper way to address those gaps. *Id*. at 1103.

The comparison here to *Refrigeration Supplies* is straightforward. Like the expert in that case, Chenvert reviewed a number of photographs and documents, relied in part on observations from others who had direct access to the roofs he did not initially inspect, and formed his own independent opinions from that information. (Filing No. 48-2, at Ex. 7). Rule 702 asks whether an expert's opinions are based on sufficient facts or data and whether the expert applied reliable principles and methods to the facts of the case, but it does not require every expert to conduct the same inspection or follow the exact same process. Fed. R. Evid. 702(b)-(d). The rule confirms that "no single factor is necessarily dispositive of the reliability inquiry" and that testimony should not be excluded merely because an expert used one accepted method rather than another. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. Chenvert's failure to personally inspect every roof during his first visit does not render his opinions "so fundamentally unsupported that [they] can offer no assistance to the jury." *Synergetics*, 477 F.3d at 956. Therefore, the motion to exclude Chenvert is denied.

### 2. *Dennis McClay*

MCMIC argues McClay should be excluded on the same grounds it raised against Chenvert: lack of engineering credentials and unreliable methodology. (Filing No. 48-1). The qualification argument fails for the same reasons already noted. It appears that McClay is a licensed public adjuster with over fourteen years of experience in damage assessment, loss estimation, and appraisal preparation, and that experience is sufficient under Rule 702 to qualify him to opine on hail damage and repair costs without holding an engineering degree. *See Robinson*, 447 F.3d at 1100.

14

As for reliability, MCMIC frames that issue slightly differently. Rather than challenging McClay's inspection practices, MCMIC contends he simply input data provided by others into Xactimate without conducting his own independent structural analysis. But that argument mistakes the nature of McClay's role. It appears his task was to translate documented damage observations into a cost estimate, not to conduct a structural engineering analysis, and the question is whether he did that reliably, not whether he should have done something else entirely.

That distinction is illustrated by the circumstances in *Brighton Crossing Condominium Association v. American Family Mutual Insurance Company*, 2018 WL 11418434 (W.D. Mo. Mar. 22, 2018). In that case, the court excluded the opinions of licensed public adjuster Robert Kitto, who inspected thirty-six damaged buildings and concluded that each roof required full replacement. The defect in Kitto's testimony was not his reliance on others or on estimating software. It was his failure to identify any reliable basis or objective methodology supporting his conclusions. He could not produce the inspection photographs, retained no handwritten notes, did not document hail-strike counts, and disclaimed reliance on any "hits per square" methodology. *Id*. at \*6-8. When asked at his deposition to explain the basis for his opinion, Kitto testified that the damage was "so obvious that it wasn't necessary" to document it. *Id*. The court concluded that Kitto was effectively asking it to "take his word for it," after failing to explain how his experience reliably supported his conclusions. *Id*. at \*8. An expert who relies principally on experience must explain how that experience leads to the opinion reached and how it was reliably applied to the facts. Fed. R. Evid. 702, advisory committee's note to 2000 amendment. Kitto could not do so.

The circumstances here are different.  McClay reviewed extensive photographs and documents covering all four of Dillon's buildings. (Filing No. 48-2, Ex. 7 at p. 16). He used Xactimate, the recognized industry standard for estimating insurance claims, rather than arriving at a bottom-line number with no formula to show for it. He produced a detailed estimate that itemized the damage building by building, breaking down replacement cost

values for each structure and the associated signs and exterior components. (Filing No. 1-1, at paras. 29-30; Filing No. 48-2, Ex. 7 at p. 16). And he drew on the observations of adjusters who were directly involved in the claim from the outset, were present during inspections, and whose findings are documented in the record, not on cursory reports containing no calculations or specific damage findings, as Kitto attempted to do. (*See* Filing No. 48-2, Ex. 7 at p. 16-17). Just because McClay may have relied on the observations of the other adjusters does not make his opinions unreliable. The factual basis of an expert opinion generally goes to weight, not admissibility, and disagreement with an expert's sources or inputs is properly addressed through cross-examination rather than exclusion. *See Synergetics*, 477 F.3d at 955-56. The court finds that McClay's use of Xactimate and his reliance on documented observations from adjusters present during the inspections are sufficient to satisfy the reliability threshold under Rule 702. Accordingly, the motion to exclude McClay is denied.

### 3. *Rex Beckham*

Finally, MCMIC moves to exclude Rex Beckham, though it does not challenge his qualifications and concedes he is a registered roof consultant with experience investigating and repairing roofing systems. (Filing No. 48-1, at p. 16). Its challenge is instead limited to reliability and rests on three arguments: Beckham conducted his formal inspection nearly two years after the storm; he inspected only two of the four buildings; and he acknowledged the damage observed during his second visit could have resulted from an intervening storm. None of these arguments warrants exclusion.

Beckham first observed all four roofs during the July 2022 inspection and testified that his observations on the second visit were consistent with what he saw on the first. (Filing No. 48-2, Ex. 2 at 16:1-18, 38:1-16). When he returned in spring 2024, he conducted a formal inspection of two buildings, opened the roofing membrane, and issued a written report recommending full roof replacement. (Filing No. 48-2, Ex. 6). His opinions are therefore grounded in both his contemporaneous observations shortly after the storm and his later hands-on inspection. Courts have declined to exclude experts in similar

16

circumstances. Again in *Refrigeration Supplies*, 507 F. Supp. 3d at 1102-03, the court admitted an expert opinion even though the expert had never personally inspected the damaged roof, relying instead on photographs and consultation with another inspector.

MCMIC's argument that Beckham inspected only two of the four buildings goes to the weight of his opinions, not their admissibility. Beckham does not claim otherwise, and his report is expressly limited to the two buildings he formally inspected. (Filing No. 48-2, Ex. 6). The appropriate response to a limited inspection is a limited opinion, and that appears to be what Beckham provided. MCMIC is free to argue at trial that his opinions should not extend beyond what he observed.

MCMIC also argues that Beckham failed to investigate whether intervening storms caused the damage observed during his second visit. Whether an expert adequately ruled out alternative explanations is a factor the court may consider in the reliability analysis. *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008). But the Eighth Circuit has repeatedly held that weaknesses in the factual basis of an expert opinion ordinarily affects credibility, not admissibility, and again are issues properly addressed through cross-examination. *See Synergetics*, 477 F.3d at 955-56. That same principle should apply here. Beckham testified he observed no signs of intervening damage and was unaware of any intervening storm events affecting his observations. (Filing No. 48-2, Ex. 2 at 18:9-19:18, 38:1-16). His acknowledgment that another storm could theoretically have caused the damage does not render his opinion unreliable. It presents a matter for cross-examination. If MCMIC has evidence that another storm caused or contributed to the damage, it may present that evidence to the jury. However, based on the circumstances here, the motion to exclude Beckham is also denied.

Accordingly, and for these reasons, IT IS ORDERED:

1. Plaintiff's Motion to Exclude MCMIC's unnamed corporate representative is granted. (Filing No. 45).

2.  Defendant's Motion to Exclude Plaintiff's Experts Brian Chenvert, Dennis McClay, and Rex Beckham is denied. (Filing No. 48).

Dated this 29th day of May, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge